542

**ERNEST E. MARKS CO. v. UNITED STATES.**

Customs Appeal No. 4316.

Court of Customs and Patent Appeals.
Feb. 3, 1941.

Campbell, Clithero & Fischer, of Chicago, Ill. (J. Milton Guy, Jr., of Chicago, Ill., and James L. Gerry, and Barnes, Richardson & Colburn, all of New York City, of counsel), for appellant.

Charles D. Lawrence, Acting Asst. Atty. Gen. (Charles J. Miville, Sp. Atty., of New York City, of counsel), for the United States.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

.BLAND, Associate Judge.

Appellant imported at Chicago in the year 1937 certain corn from Argentina. The Collector of Customs at said port assessed duty upon the merchandise at the rate of 25 cents per bushel under paragraph 724, of section 1 of the Tariff Act of 1930, 19 U.S.C.A. § 1001, par. 724, the pertinent part of which reads: "Par. 724. Corn or maize, including cracked

corn, 25 cents per bushel of fifty-six pounds; * * *."

Importer protested against this action of the collector and in the protest claimed, inter alia, that the corn was properly dutiable at 12½ cents per bushel and at various other rates, ranging from 10 cents per bushel to 22½ cents per bushel: "under and by virtue of the provisions of existing treaties between the United States and the country of exportation, the Convention of Commercial Reciprocity of 1902 between Cuba and the United States, 33 Stat. 2136, the Reciprocal Trade Agreement or Treaty of August 24, 1934, 49 Stat. 3559, between Cuba and the United States, and Section 350(a) of the Tariff Act of 1930, 19 U.S.C.A. § 1351(a)."

The United States Customs Court, Third Division, in an opinion by Judge Evans, overruled the protest, and it is from the judgment of that court so doing that the instant appeal is taken.

This case presents for our decision matters which have been before us on several occasions. Briefly, the main questions presented are whether the Reciprocal Trade Agreements Act of June 12, 1934, 48 Stat. 943, 19 U.S.C.A. §§ 1351–1354, authorized the President to make an "exclusive" agreement with Cuba, which would not be subject to the so-called "generalization clause" contained in said act; and whether the trade agreement entered into between the United States and Cuba on August 24, 1934, 49 Stat. 3559, pursuant to the authority contained in said act, was such an "exclusive" agreement, none of the provisions of which enured to the benefit of any other foreign country. The constitutionality of section 350(b) of said act, 19 U.S.C.A. § 1351(b), is attacked.

Appellant in brief and argument bases its case on three main contentions which we will here set out.

First contention. Appellant argues as follows: "The only portion of the reduction in the duty rate upon imports from Cuba which the amendment to the Tariff Act of 1934[1930] [referring to the Reciprocal Trade Agreements Act] authorized, or for which the Trade Agreement provided, which was exclusively preferential to Cuba, was twenty per cent below the lowest rate charged upon exportations from any other nation. The maximum rate of duty upon corn according to the Cuban Trade Agreement was 10 cents per bushel. If this maximum rate is to reflect a twenty per cent exclusively preferential discount, then 10 cents per bushel must be eighty per cent of the general rate. The duty rate upon 'corn imported from all other non-discriminating or favored treaty nations was therefore fixed at 12½ cents per bushel."

Appellant lists ten points under this first contention, but states that they will not be argued since they were adjudicated by this court in the following cases previously decided: Von Damm v. United States, 90 F.2d 263, 25 C.C.P.A., Customs, 97 T.D. 49094; E. & J. Burke, Ltd., v. United States, 26 C.C.P.A., Customs, 374, C.A.D. 44; and Louis Wolf & Co. v. United States, 107 F.2d 819, 27 C.C.P.A., Customs, 188 C.A.D. 84.

We agree with appellant that the subject matter of this contention has been decided adversely to it in the above-cited cases, and, although this contention and other contentions were disposed of in said cases, we have re-examined the issues therein decided and have no doubt of the soundness of the holdings therein made.

Second contention. While appellant argued in its first contention that even if a reduction in the duty rates was effectively made exclusively preferential to Cuba, the resultant rate could be preferential only to the extent of 20 per centum thereof, in its second contention it argues that no authority was granted the President by the Reciprocal Trade Agreements Act to grant any exclusively preferential treatment to Cuba of any character whatsoever, not even 20 per centum. In substance, the argument takes the following ingenious form:

That subsection (a) of the Reciprocal Trade Agreements Act specifically authorized the President to reduce duty rates by a trade agreement with any foreign nation and provided that such reduction should be generalized to the benefit of all other non-discriminating nations; that subsection (b) of said act does not, by reason of its negative phraseology, authorize the President to make a new trade agreement with Cuba which would be exclusive and preferential; that Congress did not intend to authorize such·a course, and that even if it be deemed that Congress did so intend, Congress did not, in the act, use language sufficiently apt to accomplish such a result. The point is made and repeated that if

subsection (a) does not contain express authority to make an exclusive preferential agreement with Cuba, the language of subsection (b) does not do so, since it only purports to say how the language in subsection (a) shall be construed, it being further contended that since there is no language in subsection (a) relating to the subject of a Cuban preferential, there is nothing to be construed, and that, therefore, the controverted provisions in subsection (b) are "futile and nugatory." Appellant states: "* * * If it is apparent that the first paragraph grants no power to perform a certain act, a second which states that the first does not *prevent* such act, cannot possibly *create* the authorization for such act. * * *"

As a part of the second contention, appellant presents an argument to the effect that one of the reasons why it must be concluded that Congress never intended to grant authority for an exclusive Cuban agreement as against Argentina is the existence of the treaty entered into between the United States and Argentina on July 27, 1853, 10 Stat. 1005. It is argued that Congress in the act in controversy did not intend to violate the said treaty with Argentina.

Concerning the effect of said Argentine treaty, appellant in the conclusion of its brief states that the treaty "together with the generalization provision of paragraph (a) 2,. and the 1934 Trade Agreement, collectively established" the merit of a part of its contentions. Appellant furthermore devotes some time to a discussion of the duty of the court to reconcile the Argentine treaty with the act under consideration and points out that in the treaty, unlike the context of most of the treaties which this country has entered into on like matters, there is no provision whatever relating to any preferential to Cuba.

Third contention. Appellant argues that if said section 350(b) is construed to authorize the President to make a new trade agreement with Cuba which would be exclusive and preferential, it is unconstitutional and. void, because it attempts to delegate to the President the power to legislate. Concerning the two statutory provisions in controversy, appellant states: "* * * Paragraph (a) is constitutional since it does not purport to delegate legislative power to the President, under the quoted definitions [referring to certain

holdings in J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348,. 72 L.Ed. 624] but that Paragraph (b) is an attempted delegation of legislative power to the Executive, as thus defined, and is, therefore, unconstitutional and void."

Appellant in effect contends that subsections (a) and (b) are divisible and that if subsection (b) be declared unconstitutional, nevertheless subsection (a)—which contains the generalization clause—being constitutional, should be given full force and effect.

The reason which appellant gives for arguing that subsection (a) *is* constitutional and subsection (b) *is not* constitutional, is that in the former a "yardstick" or "general rules of action" are laid down for the guidance of the President, thus bringing that subsection within the principles of the case of J. W. Hampton, Jr., & Co. v. United States, 276 U.S. 394, 48 S.Ct. 348, 72 L.Ed. 624, and cases there relied upon, and that in the latter—subsection (b)—no such "yardstick" is laid down and "No standards are thereby established to circumscribe the Presidential act." It is asserted that by virtue of the fact that before the President acts under subsection (a) certain facts must be found by him, this affords a proper standard or "yardstick" for executive action and thus avoids invalidity on the ground of the delegation of legislative authority, while in subsection (b) there is no such "yardstick."

We will now consider appellant's second contention, and for the purpose of clarity feel justified in quoting in full subsections (a) and (b) of section 350. They follow: "Sec. 350 [§ 1351]. (a) For the purpose of expanding foreign markets for the products of the United States (as a means of assisting in the present emergency in restoring the American standard of living, in overcoming domestic unemployment and the present economic depression, in increasing the purchasing power of the American public, and in establishing and maintaining a better relationship among various branches of American agriculture, industry, mining, and commerce) by regulating the admission of foreign goods into the United States in accordance with the characteristics and needs of various branches of American production so that foreign markets will be made available to

those branches of American production which require and are capable of developing such outlets by affording corresponding market opportunities for foreign products in the United States, the President, whenever he finds as a fact that any existing duties or other import restrictions of the United States or any foreign country are unduly burdening and restricting the foreign trade of the United States and that the purpose above declared will be promoted by the means hereinafter specified, is authorized from time to time—

"(1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

"(2) To proclaim such modifications of existing duties and other import restrictions, or such additional import restrictions, or such continuance, and for such minimum periods, of existing customs or excise treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder. No proclamation shall be made increasing or decreasing by more than 50 per centum any existing rate of duty or transferring any article between the dutiable and free lists. The proclaimed duties and other import restrictions shall apply to articles the growth, produce, or manufacture of all foreign countries, whether imported directly, or indirectly: *Provided,* That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and ·the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. The President may at any time terminate any such proclamation in whole or in part.

"(b) Nothing in this section shall be construed to prevent the application, with respect to rates of duty established under this section pursuant to agreements with countries other than Cuba, of the provisions of the treaty of commercial reciprocity concluded between the United States and the Republic of Cuba on December 11, 1902, or to preclude giving effect to an exclusive agreement with Cuba concluded under this section, modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba: *Provided,* That the duties payable on such an article shall in no case be increased or decreased by more than 50 per centum of the duties now payable thereon."

Every question presented in this appeal, except the question of the constitutionality of section 350 (b), supra, has been passed upon by this court, and certiorari has been denied by the Supreme Court of the United States as to the review of these questions by that court. New aspects of the situation, however, as to appellant's second and third contentions are here brought to our attention in the argument of counsel. It is especially emphasized that although the context of section 350 (a) authorizes the making of a reciprocal trade agreement, the benefits of which shall be generalized, nothing therein contained could possibly be considered as authorizing in said agreement an exclusive preferential to Cuba "at least as against Argentina," and it is further contended that the provisions of section 350 (b) do not affirmatively grant any right but merely state what is not to be found in section 350 (a).

This argument does not convince us that any views which we have heretofore expressed are unsound. Although subsection (a) does not affirmatively state that the President has the right to make an exclusive preferential agreement with Cuba, subsection (b) definitely states that nothing in the act, which includes subsection (a), shall be construed "to ` preclude giving effect to an exclusive agreement with Cuba concluded under this section, modifying the existing preferential customs treatment of any article the growth, produce, or manufacture of Cuba."

In other words, subsection (b) says that the act shall not be construed so that the generalization clause therein contained shall prevent the making of an agreement with Cuba which would not be generalized. Obviously, there is sufficient power in subsection (a) to authorize the President to enter into an agreement with Cuba, and if subsection (b) says that nothing included in (a), which contains the generalization clause, shall be construed so as to prevent the President concluding an agreement with Cuba which would not be generalized to other nations, it would seem to logically follow that if the President

entered into an exclusive preferential agreement with Cuba, the generalization clause would not apply to it.

■ It is our view, as it was the view of the trial court, which treated the instant question. in a very clear and concise manner, that the two provisions (a) and (b) go hand in hand, and that (b) attempts to, and we think does, govern the interpretation of (a), not necessarily by pointing out power-granting provisions therein, but in saying that the act as a whole shall not be construed as denying that the President, under the act, has certain power.

On this phase of the case the trial court aptly said:

"* * * It must be remembered that both (a) and (b) are of equal legislative status, that is as to say they are coordinate paragraphs of the same act; (a) contains general authority for making trade agreements, while (b) was intended· to protect the Cuban preferential guaranteed by the Reciprocity Treaty of 1902, and at the same time gave authority to the President to modify the preference granted by said treaty within the limits defined. This view is expressed in the Von Damm case, supra [90 F.2d at page 269, 25 C.C.P.A., Customs] at page 104, where the court states:

" 'We have no doubt that, as thus analyzed, section 350 (b) authorizes the President to enter into a reciprocal trade agreement with Cuba modifying the preference granted by the Commercial Reciprocity Treaty by according to Cuba changes in the 20 per centum preferential rate and by fixing preferential specific duties.' "

■ We think the chief point of weakness in the argument of appellant is in contending that we are privileged to consider the effect of (b) apart from (a). When the legislative history of section 350, which we reviewed in the Wolf & Co. and other cases, supra, is considered, and when the context of the two provisions (a) and (b) is examined, it must be concluded that the two provisions (a) and (b) are in pari materia and must be so treated, and we are of the opinion that when so considered, ample authority is, by the act, bestowed upon the President to make a new agreement with Cuba which would be preferential and exclusive to Cuba. No question here is raised, as it was in Geo. W. Cole & Co. et al. v. United States, 107 F.2d

815, 27 C.C.P.A., Customs, 201, C.A.D. 85, that the agreement did not on its face purport to be an agreement exclusive to Cuba.

■ Appellant's contention with reference to the constitutionality of subsection (b)—it asserts that subsection (a) is constitutional—needs but brief consideration. It seems too obvious to permit of extended discussion that both provisions must be construed together. It is also clear that, since Congress intended to continue to grant to Cuba exclusive preferential treatment one provision would not have been enacted except for the concurrent enactment of the other. Subsection (b) would be meaningless without subsection (a). If the act as a whole unlawfully delegates to the President legislative authority, it logically follows that the entire act must fall as being unconstitutional. This would include the generalization clause upon which appellant relies as the basis for its recovery in this litigation. · Since the appellant depends upon a portion of the act for its relief and since the act is either constitutional or unconstitutional as a whole, appellant cannot successfully argue that the act is constitutional for one purpose and unconstitutional for another. Therefore, it seems to us that as far as granting relief to appellant is concerned, it must necessarily follow that if the act is constitutional, appellant is not entitled to any relief, under our interpretation of the same, and if it is unconstitutional, the generalization clause falls and appellant has no basis for the assertion of the right claimed under the Trade Agreements Act.

■ But one question remains to be decided—the effect of the treaty with Argentina of 1853. Little need be said concerning this question, and appellant has not belabored the issue. It quotes the following provision from Article IV of the treaty:

"Article IV.

"No higher or other duties shall be imposed on the importation into the territories of either of the two contracting parties, of any article of the growth, produce, or manufacture of the territories of the other contracting party, than are, or shall be, payable on the like article of any other foreign country; * * *."

In appellant's brief it is argued, in effect, that the treaty has never been modified or denounced and that, therefore, under the treaty rights of Argentina it is entitled

to have its corn imported into this country at the rate of duty which is charged upon corn from Cuba. Appellant does not quote Article III of the said treaty. It reads:

"Article III.

"The two high-contracting parties agree that any favor, exemption, privilege, or immunity whatever, in matters of *commerce* or navigation, which either of them has actually granted, or may hereafter grant, to the citizens or subjects of any other government, nation, or State, shall extend, in identity of cases and circumstances, to the citizens of the other contracting party, *gratuitously,* if the concession in favor of that other government, nation, or State, shall have been gratuitous; or, *in return for an equivalent compensation,* if the concession shall have been *conditional.* [Italics ours.]"

Appellant calls attention to the fact that there is no provision in the Argentine treaty with respect to the Cuban Convention of 1902. This, of course, is true, because the first treaty was made almost half a century before the other one was concluded. There is no contention here that concessions from Argentina comparable to those made by Cuba in the agreement under consideration have been extended by Argentina. The Argentine treaty is of the well-known conditional variety which entitles a nation having such a treaty with the United States to none of the benefits granted to another unless it makes concessions similar to those made by the other. It is argued here, however, to the effect that Argentina has a right to insist that her treaty, entered into in 1853, should be carried out irrespective of any considerations growing out of the Cuban Convention of 1902, or of the new trade agreement under consideration. If the Argentine treaty was an unconditional one and was not to be regarded as having been modified or repealed by subsequent legislation, there might be some merit in this contention by appellant. For a full discussion of this subject matter, see Louis Wolf & Co. v. United States, supra—which related to treaties with Japan—and the authorities cited therein.

It is our view that the trial court arrived at the right conclusion in overruling the protest of the appellant, and its judgment so doing is affirmed.

Affirmed.